In the Matter of the Arbitration between SUSAN KALGREN, Respondent, and CENTRAL MUTUAL INSURANCE COMPANY, Appellant.

First Department, June 26, 1979

### APPEARANCES OF COUNSEL

*Rodney S. Lapidus* of counsel *(Donald F. Ayers,* attorney, with him on the brief), for appellant.

*Ira Bartfield* of counsel *(Melvin W. Knyper,* attorney), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Prior to May 21, 1976, Raymond Kalgren had a policy of insurance with Central Mutual Insurance Company (Central) covering a 1966 Chevrolet Corvette. Raymond, through the Hamilton Agency, transferred that policy of insurance on May 21, 1976 to cover a 1965 Buick. On July 31, 1976, Raymond was operating the Corvette when it struck a guardrail. Susan Kalgren, his sister, was a passenger in the vehicle and she purportedly sustained injuries at that time.

Susan filed a claim for no-fault benefits under her own policy with Government Employees Insurance Company (GEICO). She also filed for benefits with her brother's insurer, Central. Neither insurer was aware that a claim had been filed against the other by Susan. When Central disclaimed coverage, Susan commenced arbitration against it. Before arbitration was instituted against Central, GEICO paid Susan on her claim.

The arbitrator, unaware of the payment by GEICO, went forward with his hearing. Susan asserted at the hearing that the Corvette was covered under her bother's policy even

though that vehicle had allegedly been transferred to one William Wurster on May 26, 1976. Raymond's policy defined an "owned automobile" to include a "temporary substitute automobile". The latter term was defined as meaning "any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Susan maintained that on the Saturday prior to the occurrence she had left a message with the Hamilton Agency that the Corvette, purportedly owned by Wurster, was going to be used by her brother as a "temporary substitute vehicle" since his Buick was inoperable.

At the arbitration hearing, Central attempted to show that Hamilton never received any message with respect to Raymond's temporary use of the Corvette. Moreover, Central adduced evidence that suggested Raymond was still the owner of the Corvette on July 31, 1976. Central showed, *inter alia,* that (1) Wurster had never paid the purchase price of $4,500, (2) Wurster purchased the Corvette for a reduced sum after the collision, and (3) both the accident and police reports listed Raymond as the owner of the Corvette.

The arbitrator rendered the following opinion in this matter:

"The primary issue presented in this matter is whether or not the vehicle was transferred to the buyer during the critical period of the accident.

"There is no doubt that it is a question of fact for the determination of the trier of fact.

"The Respondent cited the case of BORNHURST V. MASSACHUSETTS BONDING AND INSURANCE COMPANY, 21 NYS 2d 137 *[sic],* which dictates that the conduct of the parties governs their relationship.

"A review of the conduct of the parties in this case, and the testimony, indicates that the intention of the parties was that a sale was to be made with repair work to be done by Mr. Kalgren. There was no evidence presented to contra-indicate this position.

"Judgment for the Claimant."

Subsequently, Central mailed drafts to Susan and her attorney in payment of the arbitrator's award. Before those drafts were cashed, Susan, at the behest of her attorney, informed

Central that GEICO had paid all her benefits prior to the institution of the arbitration. Central stopped payment on its drafts and brought the present proceeding pursuant to CPLR 7511 to vacate the arbitration award. The court at Special Term granted the application only to the extent of directing Susan to return the payments to GEICO.

■ Two basic issues are presented on appeal. The first is whether there is a rational basis for the arbitrator's award. Susan's no-fault claim against Central was adjudicated at compulsory arbitration. (Insurance Law, § 675, subd 2.) The arbitrator's award in her favor must be sustained by the courts if that award has a rational basis. *(Caso v Coffey,* 41 NY2d 153, 158; *Mount St. Mary's Hosp. of Niagara Falls v Catherwood,* 26 NY2d 493, 508; see, also, *Matter of Furstenberg v Aetna Cas. & Sur. Co.,* 67 AD2d 580.) Upon its face, the arbitrator's opinion in this proceeding is self-contradictory, and thus, irrational (cf. *Matter of Minskoff [Rehan Bldrs. Corp.],* 282 App Div 918). More specifically, the arbitrator stated "that a sale was to be made". A fair reading of this portion of the opinion seems to indicate that the arbitrator actually found that the sale of the Corvette to Wurster had not taken place on the date of the mishap. If Raymond still owned the Corvette on that date, it follows that Susan could not make a valid claim under the "temporary substitute automobile" provision. In sum, the arbitrator's conclusion would seem to warrant an award in Central's favor. If for no other reason, this matter must be remanded to the arbitrator for a clarification of his original opinion. If the arbitrator should reach a different determination on remand, a clarification of his original opinion would become academic.

The second issue presented is whether the arbitration award was procured by fraud or misconduct. CPLR 7511 provides that:

"(b) Grounds for vacating.

"1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

"(i) corruption, fraud or misconduct in procuring the award".

■ As mentioned above, both Susan and her attorney were aware that GEICO had paid her claim before the arbitration with Central was even commenced. In their roles as litigant

and lawyer, they not only had a "good faith" obligation but an affirmative duty to inform the arbitrator and Central of the prior payment made by GEICO. While their lack of candor may fall short of outright fraud, it does constitute the type of misconduct that warrants further proceedings before the arbitrator. It is not the function of this court to conjecture as to what result the arbitrator could or would have reached had he known of the prior payment by GEICO. Suffice it to say that the arbitrator should have been apprised of GEICO's payment to Susan before he was required to make an informed determination in this dispute.

Accordingly, the judgment of the Supreme Court, New York County (SCHWARTZ, J.), entered February 9, 1978, granting Central's petition to the extent of directing Susan Kalgren to return certain benefit payments to GEICO, should be reversed, on the law, the application to vacate the award should be granted and the matter should be remanded to the arbitrator for further proceedings not inconsistent with this opinion, without costs.

SULLIVAN, BLOOM, LANE and LUPIANO, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 9, 1978, reversed, on the law, the application to vacate the award granted, and the matter remanded to the arbitrator for further proceedings not inconsistent with the opinion of this court, without costs and without disbursements.