In the Matter of the Arbitration between SIDNEY SHAND, Appellant, and AETNA INSURANCE COMPANY, Respondent.

Second Department, May 19, 1980

**APPEARANCES OF COUNSEL**

*Murray O. Ellenberg* for appellant.

*Gottlieb & Hahn (David Farber* of counsel), for respondent.

**OPINION OF THE COURT**

LAZER, J. P.

This appeal confronts us with an opportunity to attempt definition of the standard to be applied when reviewing a compulsory arbitration award which has been infected by

error of law.[1] Three recent Court of Appeals determinations have set awry the conventional method of dealing with such questions (see *Matter of Garcia v Federal Ins. Co.,* 46 NY2d 1040; *Matter of Furstenberg [Aetna Cas. & Sur. Co.],* 49 NY2d 757; cf. *Matter of Levine v Zurich Amer. Ins. Co.,* 49 NY2d 907) while failing to clearly articulate guidelines for the future. Until definitive precepts do arrive, we conclude that the test traditionally utilized for judicial review of quasi-legislative acts of administrative agencies—whether any rational basis whatsoever exists for the determination—is appropriate when error of law is the focus of challenge in a compulsory arbitration award.

At issue is a judgment of Special Term confirming an arbitrator's denial of first-party no-fault benefits in which the facts are relatively undisputed. While driving his own car, petitioner was involved in an accident and applied to his insurance carrier, respondent Aetna Insurance Company, for no-fault benefits. The application was rejected with the statement that "[t]his accident arises out of and in the course of applicant's employment. The matter should be referred to applicant's *Workers Compensation* carrier." The petitioner was also informed that if he wished to contest Aetna's determination he could file a written complaint with the State Insurance Department, "submit this dispute to binding arbitration, "or bring a court action. He chose arbitration.

At the conclusion of the arbitration proceeding the claims for medical expenses and lost earnings were denied. The arbitrator found that petitioner's virtual one-man gardening-landscaping business had been incorporated under the name Shand Landscaping Corporation some time prior to the accident, that the workers' compensation policy the corporation obtained from Aetna had been canceled upon its expiration on June 17, 1976, and that at the time of the accident, nine months later, the policy still had not been replaced. After deciding that the accident arose in the course of petitioner's employment while driving with an employee-passenger to solicit a customer, the arbitrator ruled:

"The fact that [petitioner] violated the workmens compensation law by failing to have his corporation continue obtaining

1. The undefined standard was most recently applied by this court in *Matter of De Benedetto (Government Employees Ins. Co.)* (75 AD2d 642); *Matter of Bamond v Nationwide Mut. Ins. Co.* (75 AD2d 812); and *Matter of McKenna v County of Nassau, Off. of County Attorney* (75 AD2d 815).

a policy of insurance, should not work to his benefit, since it must be noted that although no evidence of injuries to his passenger was brought out, if his passenger who he testified was going to help him on this job, had been injured, that passenger would have been left without a workmens compensation remedy.

"Of one further note, while it is true that if a policy of workmens compensation had been maintained in this case, he would have been entitled to the difference that the workmens compensation carrier would have paid him for loss of wages and eighty percent of his loss of earnings. However, other than his bare testimony with regard to his wages, no evidence was presented to me by way of any books, records, income tax statements or anything else with regard to lost earnings.

"I therefore find that the claimant has failed to sustain his burden of proof and am constrained to deny him benefits."

The arbitrator's conclusion that the petitioner's failure to carry workers' compensation insurance defeated his claim clearly was predicated upon the language of section 671 (subd 2, par [b]) of the Insurance Law, which relevantly provides:

"2. 'First party benefits' means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less * * *

"(b) amounts recovered or recoverable on account of such injury under state or federal laws providing * * * workmen's compensation benefits".

In any event, the petitioner instituted the current proceeding to vacate the award pursuant to CPLR 7511 on the grounds that (1) he "was operating a private passenger vehicle * * * on the date of the accident, and did not feel that he was in the course of his employment" and (2) "[a]s no Workmen's Compensation policy existed, and no Workmen's Compensation claim had been made or pending, the 'No-Fault' benefit claims should have been honored."

Special Term found that whether the injuries arose during the course of petitioner's employment was "a factual issue which cannot be reviewed by this Court"; that petitioner could file for workers' compensation under section 26-a of the Workers' Compensation Law (Uninsured Employers' Fund); and that these "recoverable" benefits precluded payment of any further benefits by the no-fault carrier. Having concluded that

the award was rationally based under the standard for mandatory arbitration established in *Mount St. Mary's Hosp. of Niagara Falls v Catherwood* (26 NY2d 493), Special Term confirmed the award and dismissed the petition.

On appeal, petitioner argues that Special Term erred because (1) the injuries did not arise "out of and in the course of employment" (Workers' Compensation Law, § 2, subd 7); and (2) petitioner had no workers' compensation remedy since his corporation had provided no security to compensate injured employees as required by statute (Workers' Compensation Law, §§ 10, 50, 52). The latter contention implicates interpretation of the no-fault law, but whether we can decide the correctness of his construction of that law depends upon the standard of review to be utilized when the challenge to a no-fault arbitration award is based on a claim of error of law.

I

The applicable statute, of course, is CPLR article 75 of which section 7511 (subd [b], par 1, cl [iii]) provides:

"The award shall be vacated on the application of a party * * * if the court finds the rights of that party were prejudiced by * * *

"(iii) an arbitrator, or agency, or person making the award *exceeded his power* or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made" (emphasis added).

The classic interpretation of this provision is that the arbitrator will be deemed to have exceeded his power if he gives a *completely irrational* construction to the parties' governing agreement (see *Lentine v Fundaro,* 29 NY2d 382, 385). That test ignores an arbitrator's mistake of law (or fact) and focuses instead on whether he has made a new contract for the parties *(Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383; *Matter of Raisler Corp. [New York City Housing Auth.],* 32 NY2d 274, 282), employed a "perverse" rather than merely an "egregious" misconstruction of the governing terms *(Matter of Wilkins,* 169 NY 494, 496; *Matter of S & W Fine Foods [Office Employees Int. Union],* 8 AD2d 130, 132, affd 7 NY2d 1018) or rendered an award violative of public policy if enforced (see *Matter of Sprinzen [Nomberg],* 46 NY2d 623, 631). In *Rochester City School Dist. v Rochester Teachers Assn.* (41 NY2d 578, 582), the Court of Appeals

explained this highly restrictive view of the juridical review power as follows: "In the final analysis 'Arbitrators may do justice' and the award may well reflect the spirit rather than the letter of the agreement *(Lentine v Fundaro, supra,* at p 386). Thus courts may not set aside an award because they feel that the arbitrator's interpretation disregards the apparent, or even the plain, meaning of the words or resulted from a misapplication of settled legal principles."

But the cited tests and reasoning have been applied principally to consensual arbitrations—those deriving from the voluntary submission to the arbitral forum by the disputing parties. The dispute here, however, arises under subdivision 2 of section 675 of the Insurance Law which requires insurers to submit to binding arbitration of no-fault claims at the option of the insured. Such compelled submissions are classified as compulsory arbitrations (see *Matter of Furstenberg [Aetna Cas. & Sur. Co.],* 49 NY2d 757, *supra)* even if (as here), it is the assured who complains after exercising the option to pursue arbitration instead of legal action (see *Matter of Conroy v Country Wide Ins. Co.,* 75 AD2d 852; *Matter of Hicks [Royal Globe Ins.],* 96 Misc 2d 477) despite the fact that statutory schemes for compulsory arbitration usually impose a mutual duty to arbitrate (see, e.g., Labor Law, § 716; Civil Service Law, § 209).

When a party to a controversy is compelled by statute to submit to arbitration—and thereby loses the right of initial resort to a judicial forum—the right to review the resulting arbitration award cannot in turn be overly limited in scope without involving a due process issue. Thus, the Court of Appeals has interpreted CPLR article 75 as requiring broader review when compulsory arbitration is in issue than when the matter has a consensual origin (see *Matter of Furstenberg [Aetna Cas. & Sur. Co.], supra* [Insurance Law, § 675, subd 2]; *Mount St. Mary's Hosp. of Niagara Falls v Catherwood,* 26 NY2d 493, *supra* [Labor Law, § 716]; *Caso v Coffey,* 41 NY2d 153 [Civil Service Law, § 209]; see, also, 1 NY Jur, Administrative Law, § 190). *Mount St. Mary's* was seminal in distinguishing the review criteria to be applied in the two situations. Involved was a challenge to the constitutionality of section 716 of the Labor Law, which provided for compulsory arbitration of a collective bargaining disagreement. The challengers argued that since the parties were compelled by law to arbitrate their differences the limited mode of review provided

under CPLR article 75 infringed due process rights. The Court of Appeals responded by reading into article 75 a requirement that the arbitrator, to avoid exceeding his powers, render an award "supported by evidence or other basis in reason, as may be appropriate, and appearing in the record." This requirement broadened article 75 review to the extent that "an article 78 (CPLR) review would have no greater scope" (26 NY2d, at p 508).

In welding article 78 review tests to article 75, however, the *Mount St. Mary's* court dealt with the arbitrator's quasi-legislative power to *write a new contract* for the parties (cf. *Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 383, supra), as distinguished from the quasi-judicial power to *resolve a dispute arising from or under an existing contract* by interpreting the provisions of the no-fault law incorporated in such contract (Insurance Law, § 672, subd 1). The court's analogy to administrative action involving regulatory or quasi-legislative powers rather than to administrative action determinative of a dispute in the classic sense *(Mount St. Mary's Hosp. of Niagara Falls v Catherwood, supra,* p 509) was, therefore, *functionally* appropriate; the arbitrators were charged with the duty of fixing compensation and laying down other rules governing the parties' behavior, and administrative officers in exercising quasi-legislative powers perform the identical function of fixing rates and establishing other regulatory guidelines (see, e.g., *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400). Categorizing the adminsitrative-like function as quasi-legislative or as quasi-judicial thus is crucial in determining what test should be applied by a reviewing court in a challenge to the decision of the administrative agency (and by analogy, of a no-fault arbitrator): "Whether one test or another has been suggested or discussed turned on the issue involved or because an explicit statute controlled. If the questioned administrative action was determinative of a dispute in the classic sense then one test was appropriate. If the administrative action involved regulatory or quasi-legislative powers then other tests were applicable. The question, then, is in what category fall the matters to be resolved by compulsory arbitration" *(Mount St. Mary's Hosp. of Niagara Falls v Catherwood, supra,* at p 509; see, also, *Matter of Park East Land Corp. v Finkelstein,* 299 NY 70, 74).

A literal application of this suggestion would result in

categorizing compulsory no-fault arbitration as the "classic" function of dispute-resolution by an administrative agency, whose determination would be reviewed by certiorari[2] under the tests set forth in CPLR 7803 (subds 3, 4), under which the reviewing court must determine:

"3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or

"4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence."

Unsurprisingly, this was the approach taken by the courts once a determination was made that no-fault arbitration was "compulsory" under *Mount St. Mary's.* Some decisions referred directly to subdivision 3 grounds *(Matter of Nationwide Mut. Ins. Co. v Sheldon,* 70 AD2d 847 ["wrong rule of law"]; *Matter of Garcia v Federal Ins. Co.,* 61 AD2d 236, 242 [clear violation of law], revd 46 NY2d 1040, *supra)* or used subdivision 3 grounds without so specifying *(Matter of Gastworth [Merchants Mut. Ins. Co.],* 70 AD2d 823; *Matter of Kalgren [Central Mut. Ins. Co.],* 68 AD2d 549, 552; *Matter of Simmons [Government Employees Ins. Co.],* 50 AD2d 468; *Matter of Moawad [Gailord Taxi Co.],* 101 Misc 2d 753; *Matter of La Cova v Allstate Ins. Co.,* 99 Misc 2d 678, 679), or recognized the temptation to use CPLR 7803 tests (see, e.g., *Matter of Central Gen. Hosp. v Hanover Ins. Co.,* 71 AD2d 890, affd 49 NY2d 950).

But the Court of Appeals has repudiated any literal application of its suggestion in *Mount St. Mary's* that the review test is that used for administrative action taken in the exercise of *quasi-judicial* functions (i.e., CPLR 7803, subds 3, 4; *Matter of Garcia v Federal Ins. Co.,* 46 NY2d 1040, *supra; Matter of Furstenberg [Aetna Cas. & Sur. Co.],* 49 NY2d 757, *supra),* while at the same time specifically affirming the principle that compulsory arbitration arising under the no-fault law does require a broader review test than that available under article

**2.** See *Matter of Humphrey v State Ins. Fund,* 298 NY 327, 332; *Matter of Friedel v Board of Regents of Univ. of State of N. Y.,* 296 NY 347, 352; see, also, 73 CJS, Public Administrative Bodies and Procedure, §§ 8, 36; 1 NY Jur, Administrative Law, § 72; 2 NY Jur 2d, Administrative Law, § 52.

75 review *(Matter of Furstenberg [Aetna Cas. & Sur. Co.], supra;* see, also, *Matter of Levine v Zurich Amer. Ins. Co.,* 49 NY2d 907, *supra).*

The test we must articulate cannot be the extremely restricted standard under article 75 nor the certiorari standard set forth in article 78. Our conclusion is reached by examining the various tests derived from the rule traditionally applied to both administrative and arbitration law—"rationality"—in following the Court of Appeals lead in looking to administrative law for guidance; and, by considering the Court of Appeals decisions in *Garcia, Furstenberg* and *Levine* to see what tests the court actually is applying in no-fault arbitration cases. Pending further guidance from our highest court, and despite the functional disparities that vitiate any direct anology of no-fault arbitration to quasi-legislative administrative determinations, the test actually applied in the Court of Appeals seems to be the minimum rationality test akin to that utilized for quasi-legislative determinations. The significance of this conclusion for the instant case and those like it that challenge an award as based upon an error of law lies in the shifting of primary responsibility for interpreting law from the courts to the arbitrator-qua-administrator, and the consequential restricting of the courts' power to review such legal interpretations.

## II

The term "rationality" has been used in voluntary arbitration review under CPLR 7511 (subd [b], par 1, cl [iii]), although consistently qualified by a particular adverb indicating the extremely broad discretion vested in the arbitrator (i.e., "completely irrational" [see *Lentine v Fundaro,* 29 NY2d 382, 383, *supra]).* The term has been applied by the Court of Appeals under the hybrid test for no-fault arbitration ("that there was not a rational basis for the award or that the award was not otherwise grounded in reason" *[Matter of Furstenberg (Aetna Cas. & Sur. Co.),* 49 NY2d 757, 759, *supra]).* The court has also expressly equated the term "rationality" with the "arbitrary and capricious" ground and the "substantial evidence" ground of CPLR 7803 *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231). Furthermore, "arbitrary and capricious" has at times been treated as the logical equivalent to "error of law" (e.g., *Matter of Ormsby v Bell,* 218 NY 212, 216), although it more

properly relates, as indicated by its syntax,[3] to determinations involving the exercise of administrative discretion, whether consisting of promulgating rules, interpreting statutes, or finding facts (see *People ex rel. New York & Queens Gas Co. v McCall,* 219 NY 84, 88, affd 245 US 345; *Matter of Long Is. R. R. Co. v Hylan,* 240 NY 199; *Matter of Small v Moss,* 277 NY 501; *Matter of Mounting & Finishing Co. v McGoldrick,* 294 NY 104, 108; *Staten Is. Edison Corp. v Maltbie,* 296 NY 374, 380-382, mot for rearg den 297 NY 614; *Matter of Guardian Life Ins. Co. v Bohlinger,* 308 NY 174, 183; *Matter of Swalbach v State Liq. Auth.,* 7 NY2d 518, 522-526; *Matter of Baitinger Elec. Co. v Forbes,* 170 Misc 589; *People ex rel. Cotton v Leo,* 110 Misc 519, mod 194 App Div 921).

The pliancy of the "rationality" standard merely reflects the degree of discretion vested in the administrative body or the arbitrator. Therefore, by determining the degree of discretion vested in the decision-making body, the appropriate review test can be found. The use of a less stringent review test requiring *some* rationality in administrative determinations— but not *such* rationality as would eliminate any difference of opinion about their correctness between administrative agencies and the reviewing courts—has emerged in contexts involving administrative determinations of nonjudicial (i.e., discretionary) character (see *People ex rel. Schau v McWilliams,* 185 NY 92, 99). Thus, an interpretation of a regulation or standard by an administrative body charged with its application is not reviewable unless "so lacking in reason for its promulgation that it is essentially arbitrary" *(Matter of Marburg v Cole,* 286 NY 202, 212; see *Matter of Pollak v Conway,* 276 App Div 435, 437; *People ex rel. New York & Queens Gas Co. v McCall,* 219 NY 84, 89, *supra),* or if it lacks any rational basis whatsoever (see *Liebman v New York City Housing Auth.,* 91 Misc 2d 854, 855). The courts, in sum, defer to the administrative agency's authority to exercise discretion in interpreting the law under which it operates (see *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, citing *Matter of*

---

3. "[W]hether a determination *was made* in violation of lawful procedure, *was affected* by an error of law or *was* arbitrary and capricious or an abuse of discretion" (CPLR 7803, subd 3). The phrase was added to the CPLR as an equivalent to "abuse of discretion" in order to broaden review of discretionary exercises because of lingering distinctions that limited review based on mandamus instead of certiorari (8 Weinstein-Korn-Miller, NY Civ Prac, par 7803.06; *People ex rel. Schau v McWilliams,* 185 NY 92; *Matter of Long Is R. R. Co. v Hylan,* 240 NY 199; *Matter of Small v Moss,* 277 NY 501; cf. Siegel, New York Practice, §§ 561, 603 [evidentiary aspect]).

*Howard v Wyman,* 28 NY2d 434; *Ostrer v Schenck,* 41 NY2d 782, 786) or in promulgating rules with the effect of law (e.g., rate making; see *Matter of 241 East 22nd St. Corp. v City Rent Agency,* 33 NY2d 134, 143; *Matter of Campo Corp. v Feinberg,* 279 App Div 302, affd 303 NY 995).[4] Thus, there is a substantial tradition underlying a review standard that neither ignores errors of law, as CPLR 7511 seems to do in arbitration, nor supports *de novo* judicial determination of such legal issues (see, e.g., *People ex rel. St. Albans-Springfield Corp. v Connell,* 257 NY 73, 78-83; *Staten Is. Edison Corp. v Maltbie, supra,* pp 380-382; *Matter of Perino v Lackawanna Steel Co.,* 241 NY 312, 316-317; *Matter of Barry v O'Connell,* 303 NY 46; *Matter of Frissell v McGoldrick,* 300 NY 370; *Howitt v Street & Smith Pub.,* 276 NY 345, 351; *People ex rel. New York & Queens Gas Co. v McCall, supra,* p 87; *Matter of Marburg v Cole, supra; Matter of Mounting & Finishing Co. v McGoldrick, supra,* p 108). The ultimate inquiry, then, is whether the discretion vested in no-fault arbitrators by the recent decisions in *Garcia, Furstenberg* and *Levine* parallels these traditional criteria rather than the literal CPLR 7803 "error of law" test.

## III

In *Garcia* (61 AD2d 236, revd 46 NY2d 1040, *supra),* the issue before the arbitrator was the meaning of section 672 (subd 2, par [b]) of the Insurance Law, which provides for exclusion of coverage for persons whose injuries result from driving while intoxicated or while their ability to drive is impaired by drugs. The arbitrator interpreted this section to require the insurer to prove that the claimant had been convicted for driving while intoxicated. When the case reached this court, we held that the arbitrator had made an error of law: "[T]he plain meaning of the no-fault coverage statute suggests that a conviction is not required in order for an insurer to disclaim * * * There is, therefore, no rational basis for the conclusion that an insurance company may only

4. Later the review of agency rate making was held to be affordable under the declaratory judgment provision of CPLR 3001 instead of the mandamus and certiorari provisions of CPLR article 78, at least in situations where the nature of the agency act was quasi-legislative rather than quasi-judicial, although the grounds for such challenge were held to be identical to those available under article 78 *(Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407-408; see, also, *Solnick v Whalen,* 49 NY2d 224, 231-232).

disclaim no-fault coverage upon proof that the claimant has been convicted" (61 AD2d, at pp 241-242).

The Court of Appeals disagreed in the following language (pp 1041-1042): "Since section 1192 of the Vehicle and Traffic Law makes operating a motor vehicle while intoxicated a misdemeanor, we do not find the decision of the arbitrator, requiring a conviction or guilty plea to a charge under that section *so irrational as to warrant vacatur.* It is noted that the arbitrator's decision has no necessary precedential effect since it does not construe the statute but merely resolves its application as between the parties to the arbitration. In addition it would seem most inappropriate to criticize the arbitrator for determining the very question presented to him for resolution by the parties." (Emphasis added.)

In *Furstenberg,* dealing with the notorious 12-point type question (see *Liberty Mut. Ins. Co. v Donahue,* 67 AD2d 999; *Cohn v Royal Globe Ins. Co.,* 67 AD2d 993, affd 49 NY2d — [April 22, 1980]; *Matter of Country-Wide Ins. Co. [Meadows],* 63 AD2d 951), the arbitrator ruled that the insurer's cancellation notice was valid to effect cancellation despite the fact that the type size did not comply with the statute. When our brethren in the First Department considered the issue, the *Garcia* case had already come down from the Court of Appeals. The *Furstenberg* court focused on Judge BREITEL's language in *Mount St. Mary's* that, unless an arbitrator was limited by the same constitutional requirements which limit the statute conferring power on him, he " 'would have a power greater than the Constitution permits the Legislature to delegate to an administrative or regulatory agency, namely, to resolve a dispute or make regulations on less than substantial evidence or without reasonable basis or *in disregard of applicable rules of law' " (Matter of Furstenberg [Aetna Cas. & Sur. Co.],* 67 AD2d 580, 583, *supra,* quoting 26 NY2d, at p 508). The court then equated "disregard of applicable rules of law" with "error of law" (CPLR 7803, subd 3), concluding that "[i]t is substantially the same test" (67 AD2d, at p 584). Therefore, "we should do what we would do if an administrative agency had applied a wrong rule of law, i.e., vacate the determination" (67 AD2d, at pp 584-585).

Sound as this reasoning may appear, it was rejected by the Court of Appeals, which declared (49 NY2d, at pp 758-759): "[W]e agree that the standard for judicial review of the award is more exacting than in voluntary arbitration (cf. *Mount St.*

*Mary's Hosp. of Niagara Falls v Catherwood,* 26 NY2d 493). We conclude, however, that it was error on the part of the Appellate Division to set this award aside \* \* \* To the extent that it is pertinent it cannot be seriously contended that there was not a rational basis for the award or that the award was not otherwise grounded in reason. In these circumstances we are not prepared, in the disposition of this appeal, to hold as a matter of law that the award must be set aside because it may be said that the Appellate Division in cases subsequently considered by it reached a different result with respect to the effectiveness of similarly defective notices of termination." (See, also, *Cohn v Royal Globe Ins. Co., supra.)*

In *Levine* (71 AD2d 1003, revd 49 NY2d 907, *supra)* the sole issue submitted to the arbitrators was whether the general verdict in a jury trial of a third-party action against the tort-feasor included recovery for the injured party's basic economic loss, which is covered by no-fault insurance (Insurance Law, § 671, subd 1). The arbitrator determined that it did not; this court found that "[t]he evidence before the arbitrator \* \* \* demonstrates unequivocally that the verdict in favor of respondent necessarily included recovery for 'basic economic loss'." The Court of Appeals reversed and reinstated the award, saying (p 908): "Since the plaintiff sought a sum greatly in excess of $180,000 for the objective, permanent injuries sustained and for his prospective vocational handicap, it is not inconceivable that the jury, in arriving at its compromise figure may have decided not to include the no-fault items in its own computation of damages." Writing for the three dissenters, Judge JASEN concluded (p 909): "In my opinion, the finding by the arbitrator that the jury verdict did not include recovery for 'basic economic loss' lacks a rational basis".

The conclusion in each of these cases[5] was that *some* rationale existed to justify the arbitrators' determinations as grounded in reason, even though it was patent that there existed in each "fair and reasonable ground for difference of opinion among intelligent and conscientious officials" *(People ex rel. Schau v McWilliams,* 185 NY 92, 99, *supra).*

---

5. In *Levine,* the arbitrator's function was to find a fact rather than to interpret the law. The Court of Appeals decision indicates that the article 78 provision for review of this function, "substantial evidence" (CPLR 7803, subd 4), is just as inappropriate as is "error of law" (CPLR 7803, subd 3) for the legal interpretation function dealt with in *Garcia* and *Furstenberg.* (See, also, *Matter of Central Gen. Hosp. v Hanover Ins. Co.,* 49 NY2d 950.)

The test thus applicable for review of no-fault arbitrations where error of law is in issue is essentially similar to that utilized for review of quasi-legislative determinations—whether *any* reasonable hypothesis can be found to support the questioned interpretation.[6]

## IV

Returning, finally, to the instant arbitration, it is apparent to us that the arbitrator correctly ruled that petitioner's injuries arose out of and in the course of employment (see *Matter of Lief v Walzer & Son,* 248 App Div 651, affd 272 NY 542; *Matter of Goldman v Palmer & Oliver,* 277 App Div 194, mot for lv to app den 301 NY 814; *Matter of Mayer v All Electronics,* 1 AD2d 715; *Matter of Baldassare v Congel-Hazard,* 33 AD2d 527; see, also, *Matter of Young v Henry M. Young, Inc.,* 56 AD2d 941), but the correctness of his determination that the petitioner was foreclosed from receiving benefits under his no-fault insurance policy is certainly questionable. The arbitrator apparently reasoned that workers' compensation benefits were the primary source of indemnification for injuries arising out of motor vehicle accidents in the course of employment and therefore concluded that petitioner's failure to secure workers' compensation protection for himself as an employee precluded him from seeking first-party benefits from his no-fault carrier.

Special Term suggested that this analysis was rationally

---

6. Indeed, reliance on a review test derived from administrative law has become even more attractive in view of the recent amendment to the no-fault insurance law, which provides for unrestricted review of compulsory arbitration awards by "master" arbitrators, whose functioning under authority of the insurance superintendent might be argued to qualify them as administrative officers. Subdivision 2 of section 675 of the Insurance Law was amended in 1977 (L 1977, ch 892, § 13) to provide for a system of "master" arbitration, which would review no-fault arbitration awards without limitation as to grounds for modification or vacatur. The decision of the master arbitrators, however, can be reviewed only on the grounds specified in CPLR article 75 unless the amount of the award is at least $5,000, in which case either insurer or insured may obtain *de novo* review in court. With respect to the constitutionality of this purported restriction of judicial review of compulsory arbitration for no-fault awards under $5,000, we note that we recently considered the serious issue of due process violation in light of the reasoning in *Mount St. Mary's Hosp. and Furstenberg,* as well as the apparent reliance on the former case's authorization of broader review grounds in *Country-Wide Ins. Co. v Harnett* (426 F Supp 1030, affd 431 US 934 [upholding the constitutionality of no-fault compulsory arbitration prior to this amendment]), in *Matter of Bamond v Nationwide Mut. Ins. Co.* (75 AD2d 812) where we held that the amendment does not change the review test available to parties under *Garcia, Furstenberg* and *Levine.*

based (even under the stricter review standard of *Mount St. Mary's Hosp. of Niagara Falls v Catherwood,* 26 NY2d 493, *supra),* since deduction of workers' compensation benefits "recoverable" from the Uninsured Employers' Fund (Workers' Compensation Law, § 26-a) pursuant to section 671 (subd 2, par [b]) of the Insurance Law from petitioner's potential no-fault benefits would have eliminated any net recovery of no-fault benefits. In determining that workers' compensation was petitioner's exclusive source of recovery, the arbitrator was apparently relying upon the suggestion earlier made by this court that workers' compensation coverage is primary to that of no-fault insurance (see *Grello v Daszykowski,* 58 AD2d 412, 415, n 2, revd 44 NY2d 894). The *Grello* suggestion also seems to have been relied upon by the First Department in *Carlo Serv. Corp. v Rachmani* (64 AD2d 579), and by Special Term in *Hartford Ins. Group v Mendez* (93 Misc 2d 957). Furthermore, the same inference about the primacy of workers' compensation drawn from the term "recoverable" in section 671 of the Insurance Law, has been drawn from similar terms (e.g., "collectible" or "payable") in the automobile no-fault insurance statutes of other States (e.g., Mass Gen Laws, ch 90, § 34A *et seq.; Flaherty v Travelers Ins. Co.,* 369 Mass 482).

Actually, however, in the few States in which this specific issue has been resolved by decision or special statutory provision, the majority view is to the contrary (e.g., a no-fault carrier must *advance* sums expected to be paid from the primary workers' compensation carrier subject to reimbursement through subrogation or otherwise) (Col Rev Stat, § 10-4-707, subd [5]; Del Code, tit 21, § 2118, subd [f]; Fla Stat, § 627.736, subd [4]; Hawaii Rev Stat, § 294-5, subd [b]; Md Code Ann, art 48A, § 543, subd [d]; NJ Stat Ann, § 39:6A-6; *Solimano v Consolidated Mut. Ins. Co.,* 146 NJ Super 393; see, also, *Toppi v Prudential Ins. Co.,* 153 NJ Super 445; 40 Pa Stat, § 1009.106, subd [a], par [3]; S C Code, § 56-11-150, subd [d]), and the Insurance Department's regulations similarly might be construed to the contrary (see 11 NYCRR 65.6 [n] [1] [vii], 65.6 [p] [3], [5], 65.15 [n] [1] [viii], 65.15 [p] [3], [5]).

Correct or not, however, it is apparent that the arbitrator's construction of the Insurance Law (§ 671, subd 2, par [b]) was not so irrational as to require vacatur. Accordingly, the judgment of Special Term confirming the arbitration award should be affirmed.

GULOTTA, COHALAN and MARTUSCELLO, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated November 8, 1978, affirmed, with $50 costs and disbursements.