■ In the Matter of AMERICAN CONSUMER INSURANCE COMPANY, Appellant, v RUDOLPH WILLIAMS, Respondent. — Motion by appellant, *inter alia,* for reargument of an appeal from a judgment of the Supreme Court, Nassau County, dated September 30, 1980, or, in the alternative, for leave to appeal to the Court of Appeals from the order of this court, dated November 2, 1981, which determined said appeal. Motion denied. Damiani, J. P., Titone and Mangano, JJ., concur.

O'Connor, J., dissents and votes to grant reargument, recall and vacate this court's prior decision and order, and reverse the judgment, with the following memorandum: In the matter at bar the original arbitration award made December 28, 1979 denied a claim for no-fault benefits under the Comprehensive Automobile Insurance Reparations Act (Insurance Law, art 18) for severe personal injuries sustained by the claimant while a passenger in a motor vehicle which collided with a tree on May 14, 1978. A provision in the insurance policy covering the vehicle excluded any claim by an injured occupant who knew that the motor vehicle he was occupying had been stolen (see Insurance Law, § 672, subd 2, par [c], cl [iii]). The issue at the hearing before the arbitrator was limited to the claimant's knowledge; the parties stipulated that the vehicle had been stolen. In "discuss[ing] * * * the basis for the decision" without "restat[ing]" the evidence, the arbitrator wrote in his opinion that the 18-year-old claimant had testified to being awakened at home by a friend at 9:00 A.M. on the day of the accident, a Sunday, about six hours after returning home from "partying". His friend, age 16, asked if he wanted to visit girls by using an automobile belonging to the friend's aunt. The claimant did not know or inquire whether his friend had a driver's license, which the police blotter indicated was lacking; nor had the claimant ever seen his friend drive a motor vehicle except on the premises of an auto body shop. The claimant had never known his friend to possess an automobile and had not seen any aunt of his friend's in years. The claimant was well acquainted with his friend, having grown up with him and living but three or four blocks from his house, and the claimant appeared to the arbitrator to be alert and observant. But the claimant had asked his friend no questions when offered a ride in the vehicle, and the claimant did not produce his friend at the hearing;

instead, he introduced a written statement by his friend — described by the arbitrator as having "little probative value" given its hearsay nature — that described a robbery culminating in a theft of the vehicle directly before the offer of a ride was made to the claimant. On these facts, the arbitrator concluded that the vehicle had been stolen and that the claimant had known that fact at the time he entered it. The master arbitrator modified the award by finding a lack of knowledge and by remitting the matter to the American Arbitration Association for a hearing as to benefits. In his award dated May 1, 1980, the master arbitrator agreed with the original arbitrator's finding that the vehicle had been stolen by the operator, the claimant's friend, before the accident, but he disagreed with the original arbitrator's conclusion that the claimant had known the status of the vehicle. Purportedly applying the standard for judicial review of arbitration awards under CPLR article 75, as broadened for another type of compulsory arbitration in *Caso v Coffey* (41 NY2d 153 [Civil Service Law, § 209]), the master arbitrator found "that there was absolutely no basis in reason or fact for the Arbitrator below to come to the conclusion that the claimant 'knew' that he was a passenger in a stolen vehicle." In the next sentence, however, the decision confounded the legal sufficiency test (a matter of law) with the weight of evidence test (a matter of fact): "I find that the conclusion reached by the Arbitrator below was contrary to the weight of the evidence as a matter of law, and that his determination lacks a rational basis." The master arbitrator specified that in "arriving at this decision", the following fact was significant: the claimant's attorney had submitted "a very thorough and well documented submission", but the insurance company had submitted none at all. "[A]ccordingly, and particularly in the absence of having a stenographic record of the proceedings below, great weight is given to the submission made by the claimant's attorney." From a reading of the original arbitrator's decision together with the submission, said the master arbitrator, it was clear that the insurer had produced no witnesses and offered no evidence that would have "in any way" rebutted the "extensive testimony offered by the claimant". Therefore the master arbitrator remitted the matter for an arbitral hearing on damages. The insurer then commenced a special proceeding before Special Term under CPLR 7511 (subd [b], par 1, cl [iii]) to vacate the master arbitration award on the ground the arbitrator had "exceeded his power" or "imperfectly executed it" and that he had committed procedural error in receiving the claimant's submission in the absence of its service upon the insurer's counsel. Before Special Term, the insurer argued that the master arbitrator's use of the submission as evidence contradicting the original award was irrational. The submission comprised a brief and appendix, the latter containing a copy of the original award, the handwritten affidavit of the claimant's friend apparently mentioned in that award, a police report indicating that both the claimant and his friend had been arrested on the scene for occupying a stolen motor vehicle and a supplemental report noting that no formal arrest had been made, merely a referral of the matter to a detective squad for further investigation. Among the facts alleged in the brief but otherwise nowhere mentioned in the record were the following: the claimant was never arrested, charged or otherwise implicated in the theft of the vehicle or any other offense; the claimant knew his friend had an aunt who lived in town; the insurer had offered no testimony to rebut the claimant's testimony or his friend's written statement; and the claimant had not seen his friend or others implicated in the automobile theft for several days prior to the accident. Special Term rejected the insurer's argument, denied its application and confirmed the master arbitrator's award by judgment dated September 30, 1980. Using the standard articulated by this court per Lazer, J., in *Matter of*

*Shand (Aetna Ins. Co.)* (74 AD2d 442) for judicial review of no-fault arbitration awards, after noting its application to awards of a master arbitrator as expressed by this court in *Matter of Bamond v Nationwide Mut. Ins. Co.* (75 AD2d 812, affd 52 NY2d 957), Special Term ruled that the master arbitrator's award did have a rational basis, and that the insurer had at no point denied the accuracy of the claimant's version of the record before the original arbitrator as recapitulated in his submission to the master arbitrator. It could not be said as a matter of law, ruled Special Term, that "the Master Arbitrator lacked the authority to determine whether the original arbitrator's decision 'lacked a rational basis'" in the sense that "it was not supported by the credible evidence, or was the result of an improper placement of the burden of proof." By order of this court dated November 2, 1981, the judgment was affirmed for the reasons stated in Special Term's memorandum (*Matter of American Consumer Ins. Co. v Williams,* 84 AD2d 749). I vote to grant reargument, recall and vacate our decision and order, and reverse the judgment on the authority of *Matter of Petrofsky (Allstate Ins. Co.)* (54 NY2d 207) and *Matter of Smith (Firemen's Ins. Co.)* (55 NY2d 224). Although section 675 of the Insurance Law authorizes master arbitrators to modify or vacate original arbitration awards either upon or outside of the narrow grounds available to reviewing courts under CPLR article 75, the Court of Appeals recently ruled in *Matter of Petrofsky (supra)* and *Matter of Smith (supra)* that this grant of power is subject to a qualification in the same section ("in accordance with simplified procedures to be promulgated or approved by the superintendent [of insurance]") that effectively reduces their function to a species of quasi-judicial review, exercised under the same CPLR article 75 constraints governing the courts in reviewing compulsory arbitration awards — at least in the absence of insurance department regulations empowering them to subject original awards to more searching scrutiny than authorized by article 75. Read together, these decisions modified the hands-off approach toward master arbitration taken by Special Term in following the court's decisions in *Matter of Shand (supra)* and *Matter of Bamond (supra)*, the former suggesting that master arbitration would be a form of unrestricted administrative review (74 AD2d, at p 454, n 6) and the latter holding that courts should no more interfere with the results of master arbitration than they had with original no-fault arbitration prior to the Legislature's institution of the master arbitration procedure by amendment to section 675 of the Insurance Law (L 1977, ch 892, § 13). Although cited with apparent approval in *Matter of Petrofsky,* the decision in *Matter of Bamond* was reinterpreted. Master arbitration was held not to be *de novo arbitration,* but *CPLR article 75 review,* except as to those particular issues entrusted by the Superintendent of Insurance to the master arbitrator's discretion, in which case master arbitration was itself *arbitration* subject to but nominal article 75 review in the courts. Thus, in *Matter of Petrofsky (supra,* pp 209, 212), the Court of Appeals rejected the master arbitrator's finding that the original arbitration result was apparently *legally insufficient* — "without a scintilla of support from the record" — by characterizing it in light of his arbitration opinion as an issue of the *weight of the evidence* and hence as the fruit of an impermissible re-examination of the probative value of the evidence before the original arbitrator, particularly as to matters of credibility. The Court of Appeals found that the master arbitrator had reviewed factual errors instead of limiting himself to legal errors, the latter being his only ground for review (or at least review of more searching a character than that under CPLR 7511) under the superintendent's regulation (11 NYCRR 65.17 [a] [4], "'incorrect as a matter of law'", defined expressly to exclude from consideration "'procedural or factual errors'") (54 NY2d, at p

211). In *Matter of Mott (State Farm Ins. Co.)* (55 NY2d 224), decided with *Matter of Smith (supra)*, the Court of Appeals likewise found improper the master arbitrator's weighing of the probative value of the evidence. The court also characterized as impermissible review of factual error the master arbitrator's overruling of the original arbitrator's weighing of the evidence in *drawing an inference* of sobriety from undisputed evidence of the claimant's clean criminal record. The court objected to his overruling what it described as procedural error (admissibility) — the original arbitrator's disregarding the results of a blood test as insufficiently probative to permit an *inference* of intoxication under the legal standard of section 1192 of the Vehicle and Traffic Law (55 NY2d, at p 230). Yet — in the *same* decision — the Court of Appeals in ruling on the *Smith* matter *approved* of the master arbitrator's overruling the original arbitrator's refusal to draw an inference of intentional injury from undisputed evidence of intent to perform a dangerous stunt (jumping from a moving vehicle) because the error, if any, was legal (55 NY2d, at pp 231-232). Generally the distinction between factual error and legal error in arbitration and administrative adjudication is based on *function:* finding the facts and making, interpreting and applying the law. (See *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 356; *Matter of Burt Bldg. Materials Corp. [Local 1205, Int. Brotherhood of Teamsters],* 18 NY2d 556, 558; Jaffe, Judicial Control of Administrative Action, pp 546-550, 555-556.) Legal sufficiency of the evidence and irrebuttable presumptions are considered legal issues (Jaffe, at pp 550-555, 595), and refusal to admit relevant evidence (however characterized) is generally ground for reversal or annulment on the theory that the aggrieved party has been deprived of a fair hearing by such misconduct (see *Matter of Professional Staff Congress/CUNY v Board of Higher Educ.,* 39 NY2d 319, 321-322; *Matter of Lewis v County of Suffolk,* 70 AD2d 107, 111-112; *People ex rel. Hirschberg v Board of Supervisors of County of Orange,* 251 NY 156; *People ex rel. Packwood v Riley,* 232 NY 283, 289-290; 1 Benjamin, Administrative Adjudication in State of New York, pp 171-173). The validity of the master arbitration award in any given case would thus appear to require an inquiry into just what functions were exercised in achieving the articulated result. The original arbitrators in *Mott* and *Smith* appeared to have exercised the identical fact-finding function of drawing permissible inferences from the evidence. Neither expressly relied upon any legal rules of admissibility or sufficiency or upon presumptions. They merely established the factual premises to which certain legal consequences were attached by substantive provision of statute or insurance contract as they construed it. Their awards did not appear to involve the laying down of new substantive legal rules (e.g., irrebutable presumptions) or the interpretation of existing substantive legal rules. What seems to have been determinative in those matters was the nature of the master arbitrator's intervention into the fact-finding function. More particularly, it appears to have been the vocabulary used by the master arbitrator in asserting that his intervention was actually a substitution of a substantive legal rule in the form of an irrebuttable presumption for a finding of one fact in the form of a permissible inference. Thus the master arbitrators in both matters purported to vacate the original awards on the ground of error of law; but, said the Court of Appeals in *Matter of Mott* (55 NY2d, at p 232), the master arbitrator's "conclusions relat[ing] to the propriety of the arbitrator's refusal to consider the blood test results and to the weight of the evidence regarding Mott's intoxication at the time of the accident" were *actually* issues of procedure (i.e., admissibility) and weight of the evidence, respectively. In *Matter of Smith,* on the other hand, the master arbitrator had reasoned in a priori rather than a posteriori fashion: *First,* he "determined that, as a matter of law, one who

[intentionally] exits a car traveling at 30 miles per hour intends to cause his own injury", and *then* he accepted the original arbitrator's undisputed finding that the claimant had intentionally exited a car traveling at 30 miles an hour; thus, he *avoided* the need to find the fact of intentional injury by ruling — as a matter of law — that such detail was unnecessary in bridging the logical gap between *intentional stunt* and statutory disclaimer for *intentional injury*. Thus, said the court, "[t]here is nothing to indicate that, in reaching this conclusion, the master arbitrator exceeded his statutory power by weighing the evidence or resolving issues such as the credibility of witnesses. Indeed, he explicitly concluded 'The Arbitrator's finding * * * is erroneous as a matter of law, and is therefore reversed', and nothing in his award suggests that this is not an accurate statement of the basis for his reversal. Thus, it is clear that the vacatur was based upon the master arbitrator's determination that the arbitrator had made an error of law" (55 NY2d, at pp 231-232). As such, the master arbitrator's award would generally not be subject to vacatur in court review (see *Matter of Garcia v Federal Ins. Co.,* 46 NY2d 1040; *Matter of Furstenberg* [*Aetna Cas. & Sur. Co.*], 49 NY2d 757), unless it might be described as "so 'irrational as to require vacatur' " (*Matter of Smith* [*Firemen's Ins. Co.*], 55 NY2d 224, 232, *supra;* compare *Cohn v Royal Globe Ins. Co.,* 49 NY2d 942, 944, and *Matter of McKenna v County of Nassau Off. of County Attorney,* 75 AD2d 815, affd 51 NY2d 902, with *Matter of Shand* [*Aetna Ins. Co.*], 74 AD2d 442, *supra*). Under this standard of judicial review per CPLR 7511, the Court of Appeals declined to find sufficient irrationality in the master arbitrator's legal ruling in *Smith* to warrant vacatur. In the instant matter the same issues presented in *Matter of Smith* and *Matter of Mott* are before this court for resolution in accordance with the Court of Appeals analysis for legal and factual error in compulsory no-fault insurance arbitration awards. The original arbitrator *drew an inference* of guilty knowledge against the claimant from the undisputed evidence of the claimant's knowledge of his friend's lack of either an automobile or a driver's license. The arbitrator also declared the friend's written statement to be of little probative value in countering such inference. The master arbitrator, however, concluded that there was "absolutely no basis in reason or fact" for this finding of guilty knowledge, reasoning that it was contrary to the *weight* of the evidence as a *matter of law*. Was this a ruling of law or fact? Following the Court of Appeals methodology, I conclude that the master arbitrator overstepped his authority. Given what the master arbitrator actually said here ("contrary to the weight of the evidence as a matter of law"), it would appear that the master arbitrator placed his determination upon a purely legal ground. Absent articulation of some new legal sufficiency standard, however, the master arbitrator's decision can only be viewed as the product of a weighing of the claimant's credibility in light of the undisputed circumstances preceding the claimant's decision to accept his friend's offer of a ride. Hence the master arbitrator's decision was based on fact, not law, and constituted an unwarranted exercise of his limited review powers under present regulations. I vote, therefore, to grant reargument, to recall and vacate our prior decision and order and to reverse the judgment in order to annul the master arbitration award and confirm the original arbitration award.