[909 NYS2d 88]

ROHAN M. HUNTER, Respondent, v OOIDA RISK RETENTION GROUP, INC., Appellant, and USAA CASUALTY INSURANCE COMPANY, Respondent.

Second Department, October 5, 2010

**APPEARANCES OF COUNSEL**

*Salter & Sachs*, New York City (*Gary C. Sachs* of counsel), for appellant.

*Gordon & Haffner, LLP*, Harrison (*David Gordon* of counsel), for Rohan M. Hunter, respondent.

*Penino & Moynihan, LLP*, White Plains (*Scott D. Taffet* of counsel), for USAA Casualty Insurance Company, respondent.

**OPINION OF THE COURT**

DICKERSON, J.

## Introduction

The plaintiff, driving a truck registered in New York, was involved in a motor vehicle accident in Connecticut with a car that was registered in Connecticut, driven by nonparty Chelsea L. Gubbins, and owned by nonparty Robin L. Lesinski. As a result of the accident, the defendant OOIDA Risk Retention Group, Inc. (hereinafter OOIDA) paid to the plaintiff certain first-party benefits (*see* Insurance Law § 5102 [b]). We now consider whether OOIDA is entitled to so-called inter-company loss-transfer arbitration pursuant to Insurance Law § 5105 (a). We hold that, under the applicable provisions of New York's no-fault insurance law (*see* Insurance Law art 51), and under the circumstances presented here, it cannot be said that the alleged tortfeasors "would have been liable, but for the provisions of" Insurance Law article 51 (Insurance Law § 5105 [a]). Accordingly, by its terms, Insurance Law § 5105 (a) is inapplicable, and inter-company loss-transfer arbitration is not available to OOIDA.

## Factual Background

The plaintiff, who characterizes himself as an "independent trucker," was involved in a motor vehicle accident in Connecticut on February 3, 2006, with a car driven by nonparty Chelsea L. Gubbins, and owned by nonparty Robin L. Lesinski. According to the plaintiff, as a result of the accident he sustained injuries to his knees, neck, and lower back, requiring, among other treatments, arthroscopic surgery to his left knee.

Both Gubbins and Lesinski were Connecticut residents, and Lesinski's car was registered in Connecticut. The car was insured by the defendant USAA Casualty Insurance Company (hereinafter USAA), which is licensed and authorized to do business and issue insurance policies in both New York and Connecticut. The record contains a one-page document issued by USAA, entitled "Connecticut Auto Policy Renewal Declarations," which indicates that the policy issued to Lesinski provided bodily injury liability insurance coverage of up to $100,000 per person and $300,000 per accident. The full policy itself is not included in the record.

At the time of the underlying accident, the plaintiff was driving a Freightliner tractor-trailer "by agreement with its owner,"

Fleego Delivery Systems. The truck was registered to Fleego Delivery Systems in New York, and was insured under a commercial motor carrier liability policy issued by OOIDA. The policy included a mandatory personal injury protection endorsement and optional enhanced basic economic loss coverage, according to which OOIDA agreed to reimburse a covered claimant for basic economic loss up to $75,000, with the last $25,000 representing the optional enhanced basic economic loss coverage. The policy also provided that OOIDA was subrogated to the rights of the insured to the extent of OOIDA's payment of benefits under the policy.

OOIDA claimed that, based on the occurrence of the accident, as of approximately June 2007, it had paid to the plaintiff first-party benefits in the amount of $72,710 under the policy. The payments, for the most part, constituted reimbursement for medical expenses, with the sum of $28,000 allocated to payment of lost wages. OOIDA sent a letter[1] to USAA, dated December 7, 2006, indicating that it had determined that USAA's insured was responsible for the plaintiff's damages, and notifying USAA of OOIDA's "subrogation rights" to the benefits OOIDA paid to the plaintiff as a result of the accident.

According to USAA and the plaintiff, they reached an agreement to settle the plaintiff's claim against Gubbins and Lesinski. The record contains a letter written to the plaintiff's attorney from USAA, confirming its offer of $100,000 in settlement of the claim. The letter further states: "If CTCM waives subrogation, please advise." According to the plaintiff, OOIDA's demand for recoupment of the benefits it paid to the plaintiff, either from the settlement proceeds, or directly from USAA, prevented the plaintiff and USAA from consummating the settlement.

### The Instant Action

The plaintiff commenced this action against OOIDA and USAA, inter alia, for a judgment declaring that OOIDA is not entitled to recoup the first-party benefits it paid to him, either by lien against any settlement proceeds he recovers from Gubbins, Lesinski, and/or USAA, by subrogation to his rights to recover from those parties, or by any direct claim against USAA. Both defendants served answers to the complaint.

---

1. The letterhead indicates that the letter is from CTCM-Commercial Truck Claims Management. CTCM is an affiliate of OOIDA.

The plaintiff moved for summary judgment on the complaint. He argued that, under the relevant provisions of the Insurance Law, OOIDA could only assert a lien for first-party benefits where the tortfeasor was not a "covered person" within the meaning of Insurance Law § 5102 (j). Since the USAA policy provided coverage in excess of New York's minimum coverage requirements, the plaintiff contended that Gubbins and Lesinski (hereinafter together the tortfeasors or USAA's insureds) were each a "covered person" within the meaning of the Insurance Law. Additionally, the plaintiff maintained that "OOIDA's claim for recovery of its first-party payments from USAA is controlled by Connecticut law," and "such claims are specifically barred by Connecticut's anti-subrogation law."

OOIDA opposed the motion. It acknowledged that, if USAA's insureds were "covered persons" under New York law, then OOIDA was not entitled to a statutory lien against any settlement proceeds recovered by the plaintiff. However, OOIDA asserted that, to the extent that USAA's insureds were "covered persons" under New York law, it was entitled to mandatory inter-company loss-transfer arbitration with USAA pursuant to Insurance Law § 5105 (a). OOIDA contended that the plaintiff could not seek to apply New York law to avoid a lien, while at the same time asserting that choice-of-law rules require the application of Connecticut law with respect to the issues of subrogation and mandatory arbitration.

OOIDA further argued that, if USAA's insureds were covered persons, and Connecticut law was controlling, there was no actual conflict of law because the relevant Connecticut statute only barred subrogation "[u]nless otherwise provided by law." OOIDA claimed that this exception contemplated provisions in the laws of other states, such as New York, which do permit subrogation. Further, OOIDA contended that, under Connecticut law, subrogation was barred only with respect to "collateral source" payments, but that personal injury protection payments made pursuant to a no-fault policy were not "collateral source" payments. Lastly, OOIDA asserted that, even if there were a conflict, the choice-of-law rules favored application of New York law.

USAA agreed with the plaintiff that "the law of Connecticut applies." It asserted that it wrote its contract of insurance in Connecticut with the expectation that Connecticut law would apply. Further, it contended that the policy premiums were based upon that expectation. Connecticut law, according to

USAA, did not "allow for th[e] type of loss transfer" sought by OOIDA because it barred subrogation.

### The Order and the Judgment

In an order entered September 17, 2008, the Supreme Court granted the plaintiff's motion for summary judgment on the complaint declaring that OOIDA is not entitled to recover the first-party benefits it paid to him, either by lien against settlement proceeds he recovered from the tortfeasors or by inter-company loss-transfer arbitration with USAA. The Supreme Court concluded that, under the relevant provisions of the Insurance Law, an insurer may only assert a lien for first-party benefits if the tortfeasor were not covered by liability insurance that meets or exceeds the minimum requirements of the New York Vehicle and Traffic Law. Since the USAA policy met those minimum requirements, the Supreme Court determined that USAA's insureds were "covered persons" within the meaning of Insurance Law § 5101 (j) and, accordingly, OOIDA could not assert a lien against any settlement proceeds recovered from them by the plaintiff.

Additionally, the Supreme Court explained that

> "inasmuch as the accident occurred in Connecticut where Gubbins and Lesinski are domiciled, OOIDA's claim for recovery of its first-party payments from USAA is controlled by Connecticut law. . . . Since such claims are specifically barred by Connecticut's anti-subrogation law, OOIDA's claim against USAA for the first party benefits fails as a matter of law."

On November 6, 2008, a judgment was entered upon the order, declaring that OOIDA was "not subrogated to, and has no right of subrogation to, any of the rights of [the plaintiff] to recover damages of any nature from [Gubbins, Lesinski, and/or USAA]"; that OOIDA has no lien and no right to assert any lien against any settlement proceeds recovered by the plaintiff from those parties; and that OOIDA has no right to recover any first-party benefits it paid to the plaintiff from USAA, either pursuant to inter-company loss-transfer arbitration, "or otherwise."

### Discussion

The specific question presented here—whether an insurer that paid first-party benefits to its insured under a New York policy for losses arising from an accident occurring in Connecti-

cut is entitled, through inter-company loss-transfer arbitration pursuant to Insurance Law § 5105 (a), to recoup those benefits from the insurer that issued a Connecticut policy to the non-New York tortfeasors—is one of first impression before this Court. The Supreme Court answered the question in the negative, based upon its conclusion that Connecticut law barred such recoupment, and was controlling. We affirm the Supreme Court's order, but on a different ground. Specifically, we hold that Insurance Law § 5105 (a), by its express terms, does not provide for inter-company loss transfer under the circumstances presented here, since (a) the limitations on recovery in tort set forth in Insurance Law § 5104 are applicable only to accidents that occur in New York, and (b) the tortfeasors are directly liable in tort for the plaintiff's medical expenses and lost wages under Connecticut law and, thus, are not within the category of persons who "would have been liable, but for the provisions of" Insurance Law article 51 that prohibit or limit recovery in tort, inter alia, for medical expenses and lost wages (Insurance Law § 5105 [a]). Since OOIDA is not entitled to inter-company loss-transfer arbitration pursuant to Insurance Law § 5105 (a) by virtue of the express terms of that section, and the applicability of that section is the only basis for relief advanced on OOIDA's limited appeal, it is not necessary to determine whether there is a conflict between New York law, which permits such recoupment under certain circumstances, and Connecticut law, which bars such recoupment. Concomitantly, even if there is a conflict, there is no need for us to determine whether the New York or Connecticut law of subrogation applies under New York's choice-of-law rules.

## New York's No-Fault Insurance Law

The Comprehensive Motor Vehicle Insurance Reparations Act—New York's no-fault insurance law, which is codified as article 51 of the Insurance Law—was enacted to address various defects in the common-law fault approach, under which automobile accident compensation was grounded in tort law (*see Montgomery v Daniels*, 38 NY2d 41, 49-50 [1975]). The fault system was criticized because it was, among other things, "excessively and needlessly expensive and inefficient," it failed to provide compensation to a significant number of victims while overcompensating other victims for minor injuries, and it placed too great a burden on the courts (*id.* at 50-51). The no-fault scheme was intended to cure these infirmities by assuring

prompt compensation to victims for substantially all of their basic economic loss, so as to "eliminate the vast majority of auto accident negligence suits," and, concomitantly, to decrease premiums (Governor's Approval Mem, Bill Jacket, L 1973, ch 13, at 31, 1973 McKinney's Session Laws of NY, at 2335).

The no-fault insurance law is, in essence, "a two-pronged, partial modification of the pre-existing system" (*Montgomery v Daniels*, 38 NY2d at 46). The first prong concerns compensation, and requires that every owner of a motor vehicle provide himself or herself, operators, occupants and pedestrians with compensation for basic economic loss arising from the use or operation of a vehicle in this state, regardless of fault (*id.*). This effectively provides accident victims with rapid compensation in the form of first-party benefits for "basic economic loss," as defined in Insurance Law § 5102 (a), without regard to fault.

The second prong imposes limitations on tort liability between "covered persons," as that term is defined in Insurance Law § 5102 (j) (*see Montgomery v Daniels*, 38 NY2d at 46). Specifically, Insurance Law § 5104 (a) prevents a covered person from recovering basic economic loss from another covered person in an action to recover damages for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state. That section also prohibits tort recovery for noneconomic losses unless the plaintiff has suffered a serious injury (*see* Insurance Law § 5104 [a]). Because an injured "covered person" has no right to sue a covered tortfeasor for, inter alia, basic economic loss, the injured party's insurer also has no right, by subrogation, to commence an action against the tortfeasor to recoup the corresponding first-party benefits it paid to its insured (*see Country Wide Ins. Co. v Osathanugrah*, 94 AD2d 513 [1983], *affd* 62 NY2d 815 [1984]). Thus, the first-party insurer is made to "absorb the economic impact of loss without resort to reimbursement from its insured or, by subrogation, from the tort-feasor" (*id.* at 515).

### Insurance Law § 5105 (a) Generally

Insurance Law § 5105 (a) provides, in effect, a species of limited exception to one of the basic tenets of the no-fault system. Thus, our review of the overall scheme of the no-fault insurance law enables us to consider section 5105, entitled "Settlement between insurers," in the proper context.

Section 5105 (a), which provides for so-called inter-company loss-transfer arbitration, provides, in relevant part:

"Any insurer liable for the payment of first party benefits to or on behalf of a covered person . . . has the right to recover the amount paid from the insurer of any other covered person to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action at law. In any case, the right to recover exists only if at least one of the motor vehicles involved is a motor vehicle weighing more than six thousand five hundred pounds unloaded or is a motor vehicle used principally for the transportation of persons or property for hire."[2]

The "sole remedy" by which an insurer may recover under section 5105 (a) is mandatory arbitration (Insurance Law § 5105 [b]).

Insurance Law § 5105, therefore, has the effect of mitigating, in limited circumstances, the consequence of the no-fault insurance law that places the entire economic impact of loss on the first-party insurer, even where its insured was not at fault. In other words, in limited circumstances, Insurance Law § 5105 (a) places the economic burden on the party at fault (through his or her insurer) while still assuring prompt compensation to accident victims and eliminating the costs and burden on judicial resources associated with actions at law. As explained by the Court of Appeals, "[t]he Legislature in enacting section 674 [now section 5105] of the Insurance Law adopted a new procedure which authorizes first-party benefits with a resulting equitable adjustment between insurers without the need for the formalities applicable to claims and lawsuits" (*Matter of City of Syracuse v Utica Mut. Ins. Co.*, 61 NY2d 691, 693 [1984]; *see Matter of Hartford Acc. & Indem. Co. v Country-Wide Ins. Co.*, 63 AD2d 981, 982 [1978] ["Under the no-fault statute, the first-party insurer is responsible for making payments to its insured, even though, upon arbitration, it may ultimately recover from the insurer of a party at fault"]; *Liberty Mut. Ins. Co. v United States*, 490 F Supp 328, 333 [ED NY 1980] ["Once the injured parties are compensated and out of the picture, § 674 (now Insurance Law § 5105) allows the insurers to recover from each other the amounts paid to their insureds, allocated on the basis of the relative fault of the parties to the accident"]; Comment, *New York Adopts No-Fault: A Summary and Analysis*, 37 Alb L

---

**2.** There is no dispute here that the plaintiff's vehicle weighed more than 6,500 pounds unloaded.

Rev 662, 697 [1973] [the "system of subrogation" through inter-company arbitration "help(s) to minimize the costs of insurance premiums, make(s) the wrongdoer's insurer ultimately pay and provide(s) a reason for retaining a fault file that will facilitate the differentiation between good and bad drivers"]).

The reach of the inter-company loss-transfer statute is obviously rather limited, given its restriction to vehicles weighing more than 6,500 pounds or to vehicles for hire. In other words, it does not seem to be a central component of New York's no-fault scheme. Indeed, as originally enacted as former Insurance Law § 674, the section did not limit an insurer's right to inter-company loss transfer to accidents involving vehicles weighing over 6,500 pounds or vehicles for hire but, rather, allowed for settlement between insurers in all accidents involving covered persons (see L 1973, ch 13, § 1). However, the statute was amended to its present form in 1977 because "inter-company loss transfers contribute to overhead costs and delays under the no-fault system and are inconsistent with the basic objective of the no-fault system, which is to eliminate costly investigations and factual determinations concerning fault" (Governor's Program Bill Mem, Bill Jacket, L 1977, ch 892, at 7-8).

### "Covered Persons"

A prerequisite for the applicability of inter-company loss transfer under Insurance Law § 5105 (a) is that both the insured to or on behalf of whom first-party benefits were paid, and another insured person who would have been liable but for the no-fault insurance law, are "covered persons" (Insurance Law § 5105 [a]). "Covered person" is defined under the Insurance Law, in relevant part, as "any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by article six . . . of the vehicle and traffic law" (Insurance Law § 5102 [j]).

Before the Supreme Court, in support of its alternative position that the tortfeasors were not covered persons, OOIDA submitted an informal opinion from the New York State Insurance Department's Office of General Counsel (hereinafter the Office of General Counsel) "representing the position of the New York State Insurance Department." (Ops Gen Counsel NY Ins Dept No. 03-04-36 [Apr. 2003].) The Office of General Counsel opined that "a covered person is one whose No-Fault coverage arises out of a motor vehicle policy issued in New York." (Id.) Under that definition, no person insured under an

out-of-state policy, such as USAA's insureds, would be "covered person[ ]" under the no-fault insurance law. Based on its definition, the Office of General Counsel concluded that intercompany loss-transfer arbitration would not be available where, as here, an out-of-state insured was involved in an accident with a New York insured.

However, the Appellate Division, Third Department (hereinafter the Third Department), and the Appellate Division, Fourth Department (hereinafter the Fourth Department), have arrived at a different interpretation of the term "covered persons." These Courts have determined that "covered persons" include individuals who have liability coverage in excess of the minimum coverage required by Vehicle and Traffic Law § 311 (4) (a), issued by an insurer authorized to do business in New York (*see Nationwide Ins. Co. v Morigerato*, 215 AD2d 994, 995 [1995]; *Aetna Life & Cas. Co. v Allstate Ins. Co.*, 207 AD2d 984 [1994]; *Fireman's Ins. Co. of Newark v Le Compte*, 194 AD2d 918 [1993]). Vehicle and Traffic Law § 311 provides, in relevant part, that "proof of financial security" consists of an "owner's policy of liability insurance," which (1) affords minimum coverage to any one person in the sum of $25,000 where injury is sustained, and the sum of $50,000 where death results, and coverage to two or more people in the sum of $50,000 for injury, and $100,000 for death; and (2) in the case of a vehicle registered in another state is either issued by an insurer authorized to issue policies in New York, or by an unauthorized insurer who has, among other things, filed a statement with the New York State Commissioner of Motor Vehicles consenting to service of process and indicating that its policies may be deemed to be varied so as to comply with the requirements of Vehicle and Traffic Law article 6 (Vehicle and Traffic Law § 311 [3], [4] [a], [c]; *see* 11 NYCRR 60-1.1).

We agree with the Third Department's and the Fourth Department's interpretation of "covered persons," which was adopted by the Supreme Court in the present case, and we find that it is the more appropriate reading of the statute than that of the Office of General Counsel. We are of the opinion that, contrary to the conclusion of the Office of General Counsel, "[p]roof of financial security" is not limited, under article 6 of the Vehicle and Traffic Law, to policies issued in New York. Thus, here, USAA's insureds, who had coverage from an insurer authorized to issue policies in New York, including liability coverage limits in the sums of $100,000 per person and $300,000

per accident, had "in effect the financial security required by article six" (Insurance Law § 5102 [j]), making them "covered persons" for purposes of the no-fault insurance law (*Nationwide Ins. Co.*, 215 AD2d at 995; *see Aetna Life & Cas. Co.*, 207 AD2d at 984; *Fireman's Ins. Co. of Newark*, 194 AD2d at 919).

Since both the plaintiff and USAA's insureds qualify as covered persons within the meaning of the Insurance Law, OOIDA is not barred from pursuing inter-company loss-transfer arbitration pursuant to Insurance Law § 5105 (a) on the ground that a relevant party was not a "covered person."

### Inapplicability of Section 5105 (a) to the Instant Case

Nonetheless, OOIDA is not entitled to inter-company loss-transfer arbitration pursuant to Insurance Law § 5105 (a) under the circumstances presented here. The plain language of that section confers upon an insurer who pays first-party benefits to its own insured "covered person" the right to recover from the insurer of another covered person, but only "to the extent that such other covered person *would have been liable, but for the provisions of this article,* to pay damages in an action at law" (Insurance Law § 5105 [a] [emphasis added]). Thus, the statute, by its plain terms, does not apply where New York's no-fault insurance law does not prevent the tortfeasor from being held liable to pay damages in an action at law.

Accordingly, Insurance Law § 5105 (a) does not apply in the present case because New York's no-fault insurance law would not prevent the other "covered persons," the tortfeasors here, from being held liable in an action at law (*cf. Matter of Purex Indus. v Nationwide Mut. Ins. Co.*, 110 AD2d 67, 70 [1985] ["But for the No-Fault Law, petitioner would be liable as an 'insurer' to Nationwide's insured in an action at law. That being the case, petitioner must be held to be subject to Nationwide's claim for recoupment of the benefits"]). Indeed, the plaintiff in the present case could seek to recover from the tortfeasors under both Connecticut law, which repealed its no-fault statute in 1994 (*see* Conn Gen Stat Ann former § 38a-365 *et seq.*), and under New York law. As to the latter, the limitations set forth in Insurance Law § 5104 (a) upon an action between covered persons are expressly limited to losses arising out of the use and operation of a vehicle "in this state" (Insurance Law § 5104 [a]; *see Ofori v Green*, 74 AD3d 474 [2010]; *Federal Ins. Co. v Barsky*, 267 AD2d 275, 276 [1999]). Thus, New York law does not bar an injured party from recovering basic economic loss from a

tortfeasor in an action to recover damages for personal injuries arising out of a motor vehicle accident when the accident occurred in another state (*see Ofori v Green*, 74 AD3d 474 [2010]; *Federal Ins. Co. v Barsky*, 267 AD2d at 276; *Morgan v Bisorni*, 100 AD2d 956, 956-957 [1984]), provided that the laws of that state permit such recovery (*see Ofori v Green*, 74 AD3d 474 [2010]). This is the case even where the tortfeasor and the injured party are both New York residents (*see Ofori v Green*, 74 AD3d 474 [2010]; *Federal Ins. Co. v Barsky*, 267 AD2d at 276; *Morgan v Bisorni*, 100 AD2d at 956-957). As such, intercompany loss-transfer arbitration is not available with respect to any out-of-state accidents, even between New York residents, because accidents occurring outside of New York, even if subject to limitations on recovery imposed by the laws of the state where the accident occurred, are not subject to the limitations set forth in Insurance Law § 5104 with respect to actions between covered persons. Accordingly, it cannot be said that covered tortfeasors involved in out-of-state accidents "would have been liable, but for the provisions of" Insurance Law article 51 (Insurance Law § 5105 [a]).

While no New York court has had occasion to consider the applicability of Insurance Law § 5105 (a) in circumstances similar to those presented here, the United States District Court for the Western District of Pennsylvania (hereinafter the District Court) has considered the issue, and, although in dicta, reached a similar result (*see Wensley v Scott,* 459 F Supp 2d 388 [2006]). In that case, the plaintiffs, New York residents who were involved in a car accident in Pennsylvania with an Indiana resident, commenced an action in Pennsylvania to recover damages (*id.* at 394). The issue before the District Court was whether the plaintiffs would be permitted to introduce their medical bills as evidence of loss, including those bills that had been paid by their no-fault insurer (*id.* at 390). Applying New York law, the District Court reasoned that the plaintiffs were entitled to seek, prove and recover the amount of the medical bills because Insurance Law § 5104 (a) did not bar such recovery where an accident between covered persons occurred outside of New York (*id.* at 398; *cf.* Insurance Law § 5104 [c] ["Where there is no right of recovery for basic economic loss, such loss may nevertheless be pleaded and proved to the extent that it is relevant to the proof of non-economic loss"]). The District Court further noted that the plaintiffs' insurer would not be entitled to intercompany loss-transfer arbitration because Insurance Law § 5105

(a) only applied "when recovery against another covered person was not permitted" (*id.* at 398). Since the defendant there would be liable to pay damages, inter alia, for basic economic loss in a civil action, the District Court concluded that the "conditions for settlement between insurers found in § 5105 (a)" were not met (*id.* at 399).

We note the possibility that, as a result of our determination, the plaintiff could conceivably obtain "double recovery." In this regard, the District Court in *Wensley* observed that, if the plaintiffs there obtained a favorable verdict against the tortfeasor, "the manner of recovery by the Plaintiffs' insurer for benefits already paid to the Plaintiffs . . . must be through subrogation" (*Wensley v Scott*, 459 F Supp 2d at 399). New York law is unsettled, however, as to whether OOIDA may have been entitled to seek subrogation under New York law (*see Federal Ins. Co. v Barsky*, 267 AD2d at 276 [insurer, as subrogee of its insured, is entitled to recover no-fault first-party benefits from a tortfeasor where the tortfeasor was a New York resident, but the accident occurred outside of New York]; *but see Country-Wide Ins. Co. v 3-M Prod. Sales*, 96 AD2d 569, 569 [1983] ["an essential element of an insurer's right to recoup first-party benefits is that the party from whom such recoupment is sought is a noncovered person"]). Under Connecticut law, OOIDA does not have such a right of subrogation (*see* Conn Gen Stat Ann § 52-225c). In any event, here, in the judgment appealed from, the Supreme Court declared that OOIDA "is not subrogated to, and has no right of subrogation to, any of the rights of [the plaintiff]," and OOIDA did not appeal from that portion of the judgment. Rather, OOIDA limited its appeal to the narrow issue of whether it was entitled to inter-company loss-transfer arbitration with USAA. Thus, the issue of whether OOIDA has a right of subrogation is not properly before this Court.

## Remaining Contentions

Since we conclude that OOIDA is not entitled to inter-company loss-transfer arbitration pursuant to the express terms of Insurance Law § 5105 (a), and OOIDA has limited its appeal to the issue of inter-company loss-transfer, we affirm the judgment appealed from on this ground. The parties' remaining contentions either are without merit or need not be reached in light of our determination..

## Conclusion

OOIDA is not entitled to inter-company loss-transfer arbitration under Insurance Law § 5105 (a) because, by its very terms, that section only applies, inter alia, "to the extent that such other covered person would have been liable, but for the provisions of" Insurance Law article 51. Since, under the circumstances presented, Insurance Law § 5104 (a) does not prohibit the plaintiff from seeking to recover from the tortfeasors in an action at law, inter alia, for basic economic loss and enhanced first-party benefits arising from the subject motor vehicle accident, it cannot be said that the alleged tortfeasor "would have been liable, but for the provisions of" Insurance Law article 51 (Insurance Law § 5105 [a]). Consequently, the arbitration remedy of Insurance Law § 5105 (a), by its very terms, is not available to OOIDA under the circumstances presented. The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]). Accordingly, the appeal from the intermediate order is dismissed, and the judgment is affirmed insofar as appealed from.

FISHER, J.P., SANTUCCI and CHAMBERS, JJ., concur.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed insofar as appealed from; and it is further, ordered that one bill of costs is awarded to the respondents.