[14 NYS3d 427]

In the Matter of FIDUCIARY INSURANCE COMPANY, Appellant, v AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, Respondent.

Second Department, July 29, 2015

**APPEARANCES OF COUNSEL**

*D'Amato & Lynch, LLP*, New York City (*Robert D. Lang, David A. Boyar,* and *Roy T. Caplinger* of counsel), for appellant.

*Kral Clerkin Redmond Ryan Perry & Van Etten, LLP*, Melville (*Leonard Porcelli* of counsel), for respondent.

**OPINION OF THE COURT**

Hinds-Radix, J.

In the fall of 2006, a taxi insured by the petitioner was involved in a collision with a horse. The rider of the horse was seriously injured, and the petitioner paid him nearly $60,000 in no-fault benefits. The petitioner then sought reimbursement of the no-fault benefits that it had paid to the rider by filing a demand for mandatory arbitration against the respondent, American Bankers Insurance Company of Florida (hereinafter

American Bankers), the carrier that provided commercial liability coverage to the stables where the horse was boarded. The arbitrator denied the petitioner's claim, finding, in essence, that the petitioner could not recoup payment from American Bankers because American Bankers was not a motor vehicle insurer subject to the mandatory arbitration provisions of Insurance Law § 5105 and its implementing regulations. We conclude that the arbitrator had the authority to determine this threshold issue, and that the determination had a rational basis.

The facts underlying the commencement of this proceeding are not in dispute. On October 8, 2006, Jared Johnson was riding a horse named Romeo on a path alongside of North Conduit Avenue in Queens when Romeo suddenly bolted into the roadway, and collided with a taxi owned and operated by Parjit Singh. Johnson was thrown from the horse, and suffered serious injuries, including skull fractures and a broken leg. On the date of the accident, Singh's taxi was insured by the petitioner, Fiduciary Insurance Company. Johnson filed a claim with the petitioner seeking to recover first-party benefits, more commonly known as "no-fault" benefits, under Insurance Law § 5103. The petitioner ultimately paid Johnson a total of $59,906.97 in no-fault benefits.

Romeo was owned by Julius Stanton, who had no insurance coverage in effect for the horse on the date of the accident. Stanton boarded Romeo at Cedar Lane Stables (hereinafter Cedar Lane), a facility owned by the City of New York, and licensed to the Federation of Black Cowboys, Inc. (hereinafter the Cowboys). Cedar Lane and the Cowboys (hereinafter together the insureds) were insured by American Bankers under a commercial liability policy that provided no-fault coverage only for accidents arising from the use of "mobile equipment," a category that includes various types of machinery not generally used for travel on public roads. More specifically, the policy afforded supplemental coverage to the insureds for "all sums for which an insured is legally liable for bodily injury or property damages resulting" from its mobile equipment, including no-fault insurance coverage required by any insurance law. The subject accident, however, did not involve mobile equipment owned by the insureds, but, rather, a horse that the insureds merely boarded at their stables.

Following the accident, Johnson commenced an action to recover damages for personal injuries against several parties

including the City, the Cowboys, and Singh. In an order dated November 30, 2009, the Supreme Court awarded summary judgment to the City, the Cowboys, and Singh dismissing the complaint insofar as asserted against them, based upon the doctrine of primary assumption of risk.

On October 19, 2012, nearly two years after Johnson's action was dismissed against the insureds, the petitioner sought reimbursement of the no-fault benefits that it had paid him by filing a demand for mandatory arbitration against American Bankers pursuant to Insurance Law § 5105. That statute allows an insurer that has paid no-fault benefits to obtain mandatory arbitration to recoup its loss from the insurer of the party actually at fault for the accident.* In its arbitration demand, the petitioner asserted that its insured, Singh, was not at fault for the accident because he had done nothing to cause the horse to "attack" his taxi, and that the insureds had negligently created "an extremely hazardous situation" by permitting the horse to travel upon "a riding path so close to a roadway without any barricade." American Bankers did not file a response to the demand or otherwise participate in the arbitration.

In an award dated December 12, 2012, the arbitrator ruled that the petitioner could not obtain reimbursement from American Bankers because it had "failed to provide substantiation that [American Bankers] is [a] motor vehicle insurer that could be held liable under Section 5105 of Insurance Law." The arbitrator added that, therefore, "[t]he proper forum would have been litigation."

About three months later, on March 11, 2013, the petitioner commenced the instant proceeding pursuant to CPLR 7511 (b) to vacate the arbitration award, contending that the arbitrator erred in sua sponte raising an affirmative defense on behalf of American Bankers, which had elected not to appear in the arbitration proceeding. The petitioner further argued that, in any event, American Bankers was an insurer subject to mandatory arbitration of claims against it arising from an accident involving a motor vehicle for hire.

In opposition to the petition, American Bankers asserted that the arbitrator's determination had a rational basis, and

---

* However, Insurance Law § 5105 only permits recoupment of no-fault benefits for accidents involving vehicles for hire, such as the taxi insured by the petitioner in this case, or vehicles weighing more than 6,500 pounds, such as trucks.

cross-petitioned pursuant to CPLR 7511 (e) to confirm the award.

In the order appealed from, the Supreme Court denied the petition to vacate the arbitration award, granted the cross petition, and confirmed the award. The court began its analysis by noting that

> "[t]here are two types of no-fault disputes between insurers that are subject to mandatory arbitration: loss transfer and priority of payment (*see* Insurance Law § 5105; 11 NYCRR 65-3.12; 11 NYCRR 65-4.11). The arbitration procedures established pursuant to section 5105 of the Insurance Law apply to disputes over priority of payment among insurers who are liable for the payment of first-party benefits (*see* Insurance Law § 5105 [a] [b]; 11 NYCRR [65-]3.12 [b])."

The court then rejected the petitioner's argument that the arbitrator had improperly raised and disposed of an affirmative defense by determining that American Bankers was not a motor vehicle insurer liable for the payment of no-fault benefits. Rather, the arbitrator's determination was that the petitioner had failed to meet "a threshold part" of its "required showing as the applicant seeking reimbursement under Insurance Law § 5105 and 11 NYCRR [65-]3.12 (b)" that American Bankers was an "insurer" within the meaning of the applicable statute and regulations and, thus, subject to mandatory arbitration of another insurance carrier's claims against it.

■ Contrary to the petitioner's contention, the arbitrator had the authority to rule on the issue of whether the controversy was subject to mandatory arbitration under Insurance Law § 5105 and its implementing regulations. An arbitrator's authority generally "extends to only those issues that are actually presented by the parties" (*Matter of Joan Hansen & Co., Inc. v Everlast World's Boxing Headquarters Corp.*, 13 NY3d 168, 173 [2009]). Therefore, an arbitrator is precluded from identifying and considering an affirmative defense that is not pleaded by a party to the arbitration. Here, however, the issue before the arbitrator cannot be characterized as an affirmative defense, such as lack of coverage (*see New York Cent. Mut. Fire Ins. Co. v Amica Mut. Ins. Co.*, 162 AD2d 1009 [1990]). Nor was the issue whether the petitioner satisfied a condition precedent to recovery in a loss-transfer proceeding (*see Matter of Allstate Ins. Co. v New York Petroleum Assn. Compensation*

*Trust*, 104 AD3d 682 [2013]). Rather, the issue before the arbitrator was the threshold issue of whether American Bankers was an "insurer" subject to the mandatory arbitration procedures of Insurance Law § 5105 and 11 NYCRR 65-3.12 (b) (*see Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d 1, 9 [2010]). Furthermore, the fact that American Bankers elected not to participate in the arbitration did not divest the arbitrator of the authority to determine, in the first instance, whether American Bankers was an "insurer" within the meaning of the subject statute and regulation. An arbitrator may hear and determine a controversy upon the evidence produced, notwithstanding the failure of a party to appear (*see* CPLR 7506 [c]; *Matter of Whale Sec. Co. [Godfrey]*, 271 AD2d 226, 227 [2000]), and since American Bankers did not appear at the arbitration, it did not affirmatively waive the issue of whether it was an "insurer" subject to arbitration by participating in the arbitration and raising other issues to the exclusion of that issue (*cf. Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 78 [2003]; *Matter of Emerald Claims Mgt. for Ullico Cas. Ins. Co. v A. Cent. Ins. Co.*, 121 AD3d 481, 482-483 [2014]; *Matter of Nelson v Queens Surface Corp.*, 283 AD2d 577 [2001]).

As noted by the Court of Appeals, a party may not be bound to arbitrate a dispute by mere inaction (*see Matter of Commerce & Indus. Ins. Co. v Nester*, 90 NY2d 255, 262 [1997]). Therefore, American Bankers' failure to move to stay arbitration pursuant to CPLR 7503 did not render this dispute arbitrable, where, as here, no agreement to arbitrate was ever made (*see id.*; *Matter of Matarasso [Continental Cas. Co.]*, 56 NY2d 264, 267 [1982]; *Matter of Allstate Ins. Co. v Marke*, 121 AD3d 1107 [2014]), and where, as will be discussed, American Bankers was not an insurer subject to the statutory requirement to submit to mandatory arbitration.

■ Turning to the merits, in this proceeding pursuant to CPLR article 75 to vacate the arbitrator's award, our judicial review is limited. Since the petitioner sought arbitration pursuant to the mandatory arbitration provision of Insurance Law § 5105, the award may be considered to be one arising from a statutory obligation to arbitrate, notwithstanding the arbitrator's ultimate determination that American Bankers was not subject to arbitration. Thus, we treat the award as one rendered after compulsory arbitration, and give the petitioner the benefit of affording "closer judicial scrutiny of the arbitra-

tor's determination under CPLR 7511 (b)" than would be warranted in reviewing an award made after a consensual arbitration (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223 [1996]; *see Matter of Public Serv. Mut. Ins. Co. v Fiduciary Ins. Co. of Am.*, 123 AD3d 933, 934 [2014]; *Matter of Philadelphia Ins. Co. [Utica Natl. Ins. Group]*, 97 AD3d 1153 [2012]). "To be upheld, an award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious" (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d at 223 [citations omitted]; *see Matter of Santer v Board of Educ. of E. Meadow Union Free Sch. Dist.*, 23 NY3d 251, 261 [2014]; *Matter of Public Serv. Mut. Ins. Co. v Fiduciary Ins. Co. of Am.*, 123 AD3d 933, 934 [2014]; *Matter of State Farm Mut. Auto. Ins. Co. v City of Yonkers*, 21 AD3d 1110, 1111 [2005]). Moreover, with respect to determinations of law, the applicable standard in mandatory no-fault arbitrations is whether "*any* reasonable hypothesis can be found to support the questioned interpretation" (*Matter of Shand [Aetna Ins. Co.]*, 74 AD2d 442, 454 [1980]; *see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d at 224; *Matter of Scottsdale Ins. Co. v Motor Veh. Acc. Indem. Corp.*, 107 AD3d 1003, 1003-1004 [2013]; *Matter of State Farm Mut. Auto. Ins. Co. v Lumbermens Mut. Cas. Co.*, 18 AD3d 762, 763 [2005]; *Matter of Hanover Ins. Co. v State Farm Mut. Auto. Ins. Co.*, 226 AD2d 533, 534 [1996]; *Matter of Empire Mut. Ins. Co. v Jones*, 151 AD2d 754 [1989]; *Massapequa Gen. Hosp. v Travelers Ins. Co.*, 104 AD2d 638, 640 [1984]). Keeping our limited scope of judicial review in mind, and upon an application of the relevant law, we conclude that the Supreme Court properly determined that the arbitrator's award was supported by a "reasonable hypothesis" and was not arbitrary and capricious (*see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d at 224; *Matter of Progressive N. Ins. Co. v Sentry Ins. A Mut. Co.*, 51 AD3d 800, 802 [2008]; *Matter of State Farm Mut. Auto. Ins. Co. v Lumbermens Mut. Cas. Co.*, 18 AD3d at 763).

At issue here is the applicability to this controversy of certain provisions of the Comprehensive Automobile Insurance Reparations Act (*see* L 1973, ch 13), commonly known as the No-Fault Law. Pursuant to the No-Fault Law, every automobile owner must carry automobile insurance covering "basic economic loss" resulting from the use or operation of the vehicle in New York State (Insurance Law § 5102 [a]; *see Pommells v Perez*, 4 NY3d

566, 570-571 [2005]). The No-Fault Law is "aimed at ensuring 'prompt compensation for losses incurred by accident victims without regard to fault or negligence' " (*Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 25 NY3d 498, 504-505 [2015], quoting *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860 [2003]), and alleviating unnecessary burdens on the courts by limiting litigation with respect to such claims (*see Pommells v Perez*, 4 NY3d at 570-571).

As relevant to this appeal, in certain limited circumstances an insurance carrier that has paid first-party no-fault benefits to an accident victim is afforded the remedy of mandatory intercompany arbitration to recoup those benefits, through a "loss transfer," from the insurer of the party at fault for the accident (*see* Insurance Law § 5105; *Matter of Emerald Claims Mgt. for Ullico Cas. Ins. Co. v A. Cent. Ins. Co.*, 121 AD3d at 482; *Matter of Progressive Northeastern Ins. Co. [New York State Ins. Fund]*, 56 AD3d 1111, 1112 [2008]; *Matter of State Farm Mut. Auto. Ins. Co. v City of Yonkers*, 21 AD3d at 1111). "The No-Fault Automobile Insurance Law defines 'first party benefits' as 'payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle' " (*Matter of Johnson v Buffalo & Erie County Private Indus. Council*, 84 NY2d 13, 18 [1994], quoting Insurance Law § 5102 [b]). "Basic economic loss" includes necessary expenses incurred by an accident victim for medical treatment, and lost wages (Insurance Law § 5102 [a] [1] [i]; [2]).

Insurance Law § 5105 states, in pertinent part:

> "(a) Any insurer liable for the payment of first party benefits to or on behalf of a covered person and any compensation provider paying benefits in lieu of first party benefits . . . has the right to recover the amount paid from the insurer of any other covered person to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action at law. In any case, the right to recover exists only if at least one of the motor vehicles involved is a motor vehicle weighing more than six thousand five hundred pounds unloaded or is a motor vehicle used principally for the transportation of persons or property for hire. . . .

"(b) The sole remedy of any insurer or compensation provider to recover on a claim arising pursuant to subsection (a) hereof, shall be the submission of the controversy to mandatory arbitration pursuant to procedures promulgated or approved by the superintendent."

In 1977, the statute was amended to its present form, which restricts recovery to accidents involving vehicles for hire or vehicles weighing more than 6,500 pounds (*see Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d at 10). The scope of recovery was restricted by the 1977 amendment to address concerns that intercompany loss-transfer arbitration proceedings "contribute to overhead costs and delays under the no-fault system and are inconsistent with the basic objective of the no-fault system, which is to eliminate costly investigations and factual determinations concerning fault" (Governor's Program Bill Mem at 7-8, Bill Jacket, L 1977, ch 892; *see Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d at 10).

Insurance Law § 5105 serves to mitigate the effect of placing the entire burden "of loss on the first-party insurer, even where its insured was not at fault" (*Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d at 9), and allows insurers to recover from each other the first-party no-fault benefits paid to their insureds, allocated on the basis of their relative fault (*see id.*; *Matter of City of Syracuse v Utica Mut. Ins. Co.*, 61 NY2d 691, 693 [1984]). Since, generally, where a vehicle for hire is involved in an underlying accident, "mandatory arbitration is the sole remedy regarding disputes between insurers over responsibility for payment of first-party benefits," no action at law lies in such a situation to adjudicate a dispute between insurers over liability for first-party no-fault benefits (*State Farm Mut. Auto. Ins. Co. v Nationwide Mut. Ins. Co.*, 150 AD2d 976, 977 [1989]; *see Matter of Philadelphia Ins. Co. [Utica Natl. Ins. Group]*, 97 AD3d 1153, 1157-1158 [2012]), or disputes over priority of payment of first-party benefits (*see Matter of Pacific Ins. Co. v State Farm Mut. Auto. Ins. Co.*, 150 AD2d 455, 456 [1989]).

The term "insurer" is defined in Insurance Law article 51 as an "insurance company or self-insurer, as the case may be, *which provides the financial security required by article six or eight of the vehicle and traffic law*" (Insurance Law § 5102 [g] [emphasis added]). In addition, the regulations implementing the No-Fault Law state that they apply to "mandatory arbitration of controversies between insurers, pursuant to the provi-

sions of section 5105 of the Insurance Law, and shall apply to insurers, self-insurers and compensation providers" (11 NYCRR 65-4.11 [a] [1]). Insurers are defined in those regulations as both insurers and self-insurers "as those terms are defined in . . . Part [65 of Title 11 of the NYCRR] and article 51 of the Insurance Law; the Motor Vehicle Accident Indemnification Corporation (MVAIC); any company providing insurance pursuant to section 5103 (g) of the Insurance Law; and compensation providers as defined in section 5102 (1) of the Insurance Law" (11 NYCRR 65-4.11 [a] [1]).

Insurance Law § 5105 (b), which provides that the "sole remedy of any insurer or compensation provider to recover" first-party benefits on a no-fault claim "shall be the submission of the controversy to mandatory arbitration" (*see Eagle Ins. Co. v ELRAC, Inc.*, 291 AD2d 272, 273 [2002]; *Matter of Pacific Ins. Co. v State Farm Mut. Auto. Ins. Co.*, 150 AD2d at 456), is binding only upon insurers or self-insurers, "as those terms are defined in . . . Part [65 of Title 11 of the NYCRR] and article 51 of the Insurance Law" (11 NYCRR 65-4.1; *see* 65-4.11 [a] [1], [5]), and not to insurance carriers which do not meet those definitions (*see Aetna Health Plans v Hanover Ins. Co.*, 116 AD3d 538 [2014], *lv granted* 24 NY3d 912 [2015]). Thus, not all insurance carriers that insure those actually involved in an accident are subject to the mandatory arbitration provisions of Insurance Law § 5105 (b) and its implementing regulations. Furthermore, these provisions do "not apply where New York's no-fault insurance law does not prevent the tortfeasor from being held liable to pay damages in an action at law" (*Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d at 12).

Here, the American Bankers' policy did not provide no-fault insurance coverage for the type of accident underlying this dispute. Moreover, American Bankers did not insure a person, vehicle, or animal involved in the underlying accident, but only the stables at which the animal was boarded. Accordingly, American Bankers cannot be deemed to be an "insurer" as that term is defined by Insurance Law article 51 and the pertinent regulations.

Moreover, Insurance Law § 5105 does not apply here because New York's No-Fault Law would not preclude American Bankers' insureds from being held liable to pay damages in an action at law. The decision of this Court in *Matter of Purex Indus. v Nationwide Mut. Ins. Co.* (110 AD2d 67 [1985]) does not support a contrary result. In that case, this Court ruled that the

petitioner was "the self-insured owner of the vehicle involved in the accident" (*id.* at 69) and, thus, satisfied the statutory definition of an "insurer" that is "subject to mandatory arbitration for adjusting the payment of no-fault benefits between insurers" (*id.* at 68), since, "[b]ut for the No-Fault Law, petitioner would be liable as an 'insurer' to [the respondent's] insured in an action at law" (*id.* at 70). Here, on the other hand, the No-Fault Law would not preclude American Bankers' insureds from being held liable in an action at law (*see Hunter v OOIDA Risk Retention Group, Inc.*, 79 AD3d at 12).

Since American Bankers did not meet the definition of insurer or self-insurer under the No-Fault Law and the regulations promulgated thereunder (*see Matter of Purex Indus. v Nationwide Mut. Ins. Co.*, 110 AD2d at 68-70), the determination of the arbitrator that the claims against it were not subject to compulsory arbitration was supported by a reasonable hypothesis. Accordingly, the Supreme Court properly denied the petition to vacate the arbitrator's award, and properly granted the cross petition to confirm the award.

The order is affirmed.

SKELOS, J.P., DICKERSON and MILLER, JJ., concur.

Ordered that the order is affirmed, with costs.